I'll take up the final case of the morning, People v. Tyler McQueen, case number 514-0013. As a preliminary matter, it's my understanding that there has been an oral motion to continue on behalf of the state due to an illness. It's also my understanding that defense objects. Is that correct? Yes, sir. And the motion continues denied. The court takes further note that Justice Chapman is the other member of this panel and will be a fully participating member of this panel. She's not available today to be present, but she will participate by listening to the oral argument and reading the briefs in record. You may proceed, counsel. Yes. Your Honor, I'm Assistant Defender Levi Harris on behalf of my client, the appellate Tyler McQueen. I've raised three issues in our briefs. With your leave, I'd like to focus on the first issue today unless your Honors have questions about the other two. May it please the Court, I'm here today seeking a new trial for my client, Tyler McQueen, because the trial court denied his Sixth Amendment right to counsel and to present a defense by preventing counsel from arguing to the jury that Helen Marie Westall came into the victim's house and finished him off after Tyler, my client, had fled the scene. This was an argument for second-degree murder, and it was an argument that was well-supported by evidence. I would like to talk about the relevant law, about counsel's strategy and theory of the case and the facts that support that theory, and then the Court's decision. So first, the law says that the defendant has a constitutional right to make a proper closing argument on the evidence and applicable law in his favor. We know, we always hear that there's wide latitude to comment on the evidence presented at trial as well as any fair, reasonable inferences therefrom. That goes to the prosecution, it goes to the defense. Whatever is deducible from the testimony by direct proof or legitimate inference is a fair subject to comment by counsel. So that's the law. Counsel had a strategy and a theory. And counsel's strategy was, at the very beginning, to say, Look, you're not going to like my client. My client committed a crime. He's guilty of second-degree murder. And that was his angle at opening. That was his angle when he was cross-examining the state's witnesses. That was his angle putting on his own evidence, specifically photographs. And that was about to be his angle in closing when he was prevented from arguing, So who is the person who did the most heinous stuff to this man and killed him? Counsel? No, excuse me. You're in the middle, so. Well, he'll get a chance. And we'll extend your argument since we spent time talking between ourselves here. My question is, what is the standard of review as to trial judges controlling or closing arguments? Well, Your Honor, it's the trial judge has discretion to curtail closing arguments. So that part's abuse of discretion. But that discretion kicks in when the court is being reasonable. And our argument is that the court wasn't reasonable here, that it was an abuse of discretion. For the purpose, for two reasons. One, evidence supported this theory and supported this argument. Okay. And that focuses in on the issue, then, is what evidence would support that argument that Helen Westall, first of all, was there? Okay, well, the first thing was that she, when she, I don't know how all of her statements necessarily even came in, but she told the police officer who testified here, state's witness, you know, you're probably going to see me on surveillance outside of the victim's home. So. That is in the record. Yes. I can hunt for that. Don't worry about it. I would normally do it on rebuttal, but I assume there won't be one. But, yes, that is in the record. That's from the state's own witness who interviewed both Helen Westall and my client testified. He's the one that my client's statement came through. So she said that. Tyler said he thought that she followed him. And Tyler said that he was afraid that she would kill him, that she had threatened to kill him if he didn't follow through with this. So it's kind of a carrot and stick. Okay, I'll give you this 93 Oldsmobile, and if you don't do it, I'm going to kill you. But, counsel, Tyler's statement was that, you know, he thought she might follow him. I mean, that's pure speculation, is it not? No, Your Honor, I don't think so. I think that it's not that she – not that he thought that she might follow him. It's that he thought that she did follow him. And, in fact, that's why he went into the house in the first place is because he thought she was lurking out there somewhere to make sure that he went into this house. You know, obviously, it's a defendant's statement. And so our point is the jury didn't have to believe that statement. The jury could go ahead and find guilt on first-degree murder. But the jury shouldn't have been able to hear what the defense theory was and to hear that argument. So, you know, what the court got hung up on is saying, well, you know, I just don't find this plausible. That's fine. The court's not required to find it plausible. And, in fact, I've never been a trial judge, but I would suspect that most times trial courts don't find defense arguments plausible. But that's not the standard. The standard is is there some evidence that would support this argument and let's let the fact finder make that decision. Well, counsel, your client argued for second-degree murder, first-degree murder. So how does this argument about what should have been let in, the closing argument, how does that – support your position on that? Well, let me kind of go at it backwards and say that I would argue that without Helen Marie Westall, there's – I mean, who else came in and did this? If you look at the wounds, they're ghastly. We can make a whole other argument about that. Somebody cut this man's throat four times, left to right, up towards the ear. Pretty gruesome. There were other wounds to the body that Tyler didn't testify to – or, excuse me, not testify. He didn't put in his statement that were there. Counsel was able to say, look, these were indicative of great rage. My client didn't even know this guy. He had no great rage towards this guy. He's doing this for an Oldsmobile and $10,000. Wasn't that explained by the testimony of Dane Martin? Your Honor, I don't think so. And there was a disagreement between the State and I on that. This really doesn't look like what Dane Martin supposedly told my client to do. He said, push his head down, cut him like that, he'll bleed out in front, there won't be a struggle, there won't be any noise. There was a huge struggle here. Blood went everywhere. I mean, it's awful. I'm talking about the rage. Isn't it the statement that he made to Dane Martin that using a knife is a way to deal with getting rid of your own inner rage? I don't know that he used the word rage. Maybe – I don't believe that he used the word rage. I think it was blow off steam or to get out of some frustration or something like that. But, again, this is really, obviously, an intense crime scene. One of the worst I've seen, not that that matters. But if all of that was done by Tyler McQueen and there's no plausible argument for who might have done the worst wounds, that was a lot like first-degree murder. Okay? So if, you know, at the very beginning from the court, I'm not going to let you talk about Helen Westall at all. I'm not going to allow these inferences to be put before the jury. Then maybe you say, okay, we're not even conceding second-degree murder. You come up with a different strategy. This is almost like, you know, Lucy following the football away from Charlie Brown at the last minute that this guy sets up his whole case to argue this woman came in after my client fled. He went in. He had no business to be there. Robert had every right to stay at this get-him-trying-to-get-him-out-of-his-house. There was a struggle. He flees. She goes into the house, finishes him off, and then moves his body. And that moved body, the first picture in, I believe it was in Your Honor's appendix in Appendix B, shows this man. He's got his throat cut. He's lying on a pristine white mattress. There's nothing under his neck. Okay? So he almost had to, but he couldn't climb up there. There would have been blood all over. Somebody moved that body, okay? And Tyler denied that he did it repeatedly, even before he had any information from the police about why we're even asking you this. So the argument is this woman, I don't want to say she's crazy, but she's mentally ill. She's got multiple personality disorder. She hates her uncle. She comes in, slashes his throat, finishes him off, and then for whatever reason poses him to sort of stare out the window. I began by answering your question, and I think I've gotten through most of what I wanted to say about what I think the facts in support of this argument show. And again, I think the court made this decision based on, not that it didn't think there was evidence in the record, which is what it should have been thinking about, but he said, I don't find this plausible. You know, I'm not required to believe, the jury's not required to believe this. 100% true, but that's not a reason not to let the jury decide that and hear that argument. We know that the jury sent out a jury note asking about the preponderance of the evidence standard, which would have only come into this case if you're talking about second-degree murder. So they were curious about it. They were thinking about that jury instruction, but yet they're not equipped. In fact, not only did they not get to consider this, but when counsel made this argument, the court sustained the argument. So the courts sort of weighed in, and the jury sees, okay, he's expressed his disaffirmation. We shouldn't even be thinking about this Helen Marie Westall. So, I mean, basically my client hits up and puts on a case that leaves him with nothing but being found guilty of first-degree murder after going with this strategy the whole time. I think that's just about all that I have, unless you have other questions. The only thing I would ask is on the – your client argued it should be second-degree murder, not first-degree murder. And I recall reading about the gist of that argument was, hey, look, we came in and the victim pulled out a knife, and therefore I didn't mean to kill him. I mean I thought that was the whole gist of the second-degree murder argument was the fact that the victim fought back. Well, the victim fights back. That's fine. That explains, okay, he was on top of me, and I got the knife away from him. I'm stabbing him in the back or I'm stabbing him in the thigh. And then once I did that and he was distracted, I pushed him off of myself and I ran out the door. Okay? That's the argument. That throat slash is not, oh, we were struggling over a knife or we were fighting back and forth. That somebody is behind this victim holding a knife to the throat and slashing him. Okay? So if the jury believes that my client did that, that looks a lot like first-degree murder. That wound, that wound and positioning the body is what counsel was focused on putting the blame on Helen Westall for. Does that make sense? Anything else, Your Honors? If not, we just ask that you would reverse and remand for a new trial where he gets to make this argument to the jury. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course. The court will stand in recess for the day. All rise.